[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action for dissolution of marriage was brought to this court on April 27, 1993. The parties were intermarried on June 4, 1983 in Holley Hill, Florida. The parties have resided continuously in the State of Connecticut for at least twelve (12) months prior to the date of the complaint. There are two minor children issue of the marriage: Bryan Robert Mapes, born March 27, 1984; and Matthew Steven Mapes, born December 8, 1987. Neither party has received assistance from any governmental agency.
The court finds the following facts. The plaintiff husband is thirty-five (35) years of age and the defendant wife is thirty-six(36). The health of both is good. The plaintiff was a firefighter in Florida when the parties married, and the defendant a municipal secretary. She has one semester each at a community college, and another college. The plaintiff works three jobs and has done so for several years in order to support his family. He has a full-time job at Norwalk Hospital where he is a paramedic. He is paid at a base rate of $18.58 per hour. He is also paid for overtime. He also receives a differential when he works successive night shifts, or weekends, or as a supervisor. In addition, he also works approximately twenty (20) hours per week for Danbury Ambulance Service where he receives $19.50 per hour. Occasionally, he teaches as a member of the National Faculty for Medical Priority Consultants in Salt Lake City, Utah. All of his income, including overtime and differential rates, is reflected on his financial affidavit.
The defendant did not work for ten (10) years of the marriage. By agreement of the parties, she was a full-time homemaker and mother. In February, 1993, one month before the parties separated, she obtained employment at Home Depot as a cashier. At the time of trial, she was a phone sales operator with an hourly rate of $8.75 for thirty-five (35) hours. She CT Page 9207 receives benefits and does not have to work on weekends at present. She arranges her work hours to accommodate the children's schedules.
At the time of the marriage, the defendant owned one-half of a duplex in Florida. She sold it one year after the marriage when the parties and their new born son moved to Connecticut. The parties bought a home in Trumbull, and the proceeds from the sale of the defendant's condominium, together with her share of her grandmother's estate and monies from her parents, provided the down payment.
In November, 1985, the parties sold their home when the defendant urged a return to Florida because the cost of living was less there. They used the proceeds from the sale to purchase a home in Daytona. In the summer of 1988, the parties again returned to Connecticut. They did not manage to sell the Daytona, Florida, home until December 30, 1993. For more than two years, they and their two sons lived rent-free with the defendant's parents in Hyde Park, New York, in a situation that grew stressful for all members of the family. By the time the Daytona house sold, the parties had already separated, although they were attempting reconciliation at the time of sale.
The net proceeds from that sale was approximately $51,000. That sum was deposited in the bank account of the defendant's parents. A portion of that money is claimed by the plaintiff. The plaintiff claims that $35,000 of the amount was owed to the defendant's parents from a loan made and memorialized by a promissory note dated June 1, 1986. Although the parties did not make any payments, the note called for payments of $100 per month, beginning in June of 1986, and continuing until paid in full. The interest rate on the note was 8 percent per annum.
There is no document to account for the remaining $12,000 that the plaintiff concedes should have been repaid and was repaid to the defendant's parents. However, he claims that $5,000 of the $51,000 was money that should have been shared between the parties. The defendant's position is that her parents were very generous to them throughout the marriage and that her husband is not entitled to any of it.
The parties did not own real estate at the time of the dissolution hearing. At present, the plaintiff lives with a friend and pays rent to her. The defendant lives in a condominium CT Page 9208 with the parties' two children and pays $1,000 per month as rent. The husband has paid $875 per month toward her rent.
The issue with regard to the disbursement of the proceeds of sale underscores one of the two major reasons for the breakdown of the marriage. The parties had many arguments over family finances. The plaintiff worked industriously. At one point, he commuted two hours each way to Hartford, Connecticut, for approximately four to five months. Nevertheless, there was not enough money to sustain the parties' spending habits. They used their credit cards freely and were constantly in debt. The court finds that the parties were unrealistic and perhaps irresponsible. For instance, at the time of the sale of the Daytona house in 1993, they immediately deposited the net proceeds to the defendant's parents' account, and then went on a spending spree with their children. They bought leather coats and other items and spent enough money so that they did not have the funds to return north. They called Mrs. Gruen, the defendant's mother, who sent them $3,000.
Another major cause for the breakdown of the marriage, was the plaintiff's infidelity. At the time that the defendant was pregnant with their first child in Florida, she contracted gonorrhea. The only source, as far as she was concerned, and the court so finds, was her husband. His explanation of this episode was not convincing. Subsequently, when she was pregnant with her second child, her husband was arrested in connection with soliciting a prostitute who happened to be an undercover police officer. The case was reported in the local newspapers and because the plaintiff was known throughout the community, both parties were humiliated. The court file was sealed and there was no evidence that he was convicted of this charge. However, in response to questions about any other incidents involving prostitutes, the plaintiff refused to respond on the grounds of his fifth amendment privilege against self-incrimination. The court found his testimony with regard to his infidelity far less convincing than the defendant's testimony on the subject.
Therefore, the court finds that since the wife attempted to reconcile with her husband, and tried to overcome the emotional baggage that came with his behavior, the plaintiff bears the greater burden of the fault in the breakdown of this marriage than the wife. The marriage has broken down irretrievably and there is no hope of reconciliation. CT Page 9209
During the pendency of this action, the parties have shared joint custody of the children and have been generally successful in working out visitation around their work schedules. Both are to be commended for their obvious interest in keeping the children's contact with each balanced. The defendant has indicated that she would leave Connecticut with the children if she did not receive support sufficient to maintain them in the "style" to which they had become "accustomed." The court finds that that "style" existed because of the largesse of the defendant's parents and the debt the parties incurred, and it is unrealistic to expect its continuance based on the financial information available at the time of the final hearing.
The court has had the opportunity to observe the demeanor of the parties and has reviewed the exhibits in this case.
In addition, the court has carefully considered the statutory criteria set forth in sections 46b-81, 46b-82 and 46b-86(b) of the General Statutes in reaching the decisions reflected in the orders that follow:
1. The marriage of the parties is dissolved on the grounds of irretrievable breakdown.
2. The parties shall share joint custody of the minor children. The defendant shall be the primary residential parent. The plaintiff shall have reasonable, liberal and flexible rights of visitation with the minor children. Visitation shall include, but not be limited to, at least one week day and/or week night and alternating weekends. On the week days, he shall be responsible for picking up the children at their school bus stops, for feeding them dinner and for returning them to the defendant's home. On weekends, he shall have the children from Friday after school to Sunday at 6:00 p.m. In addition, he shall have the children on Father's Day while the defendant shall have the children on Mother's Day, these dates taking precedence over the weekend visitation schedule. During summer vacations, week day visitations shall begin at 8:00 a.m. and end at 6:00 p.m. The plaintiff shall also have the children during the summer for two weeks. He shall notify the defendant no later than May 5 of each year as to the dates he can exercise visitation in accordance with his work schedule. It is hoped that the plaintiff will give the defendant the earliest possible notification so that the defendant can arrange her own vacation schedule. Holiday visitation will be alternated in accordance with the parties' CT Page 9210 work schedules.
In the event the defendant decides to relocate the children out of state, she shall give the plaintiff ninety (90) days notice. She shall bear the burden of proof that such a move is in the best interests of the children.
3. (a) The plaintiff shall be responsible for paying the following debts:
Citibank Visa, Wachovia Visa, Amoco, Norwalk Hospital Credit Union, Montgomery Ward, and Ford Motor Credit Company for his vehicle. He shall hold the defendant free, harmless and indemnified thereon.
(b) The defendant shall be responsible for paying the following debts:
Dr. Fitzgerald, Dr. Garofolo, Dr. Gershowitz, Bay Street Pediatrics, Norwalk Pathology, Paul Fox, Sue Gostanian, Discover, AS, Ford Motor Credit Company for her vehicle, Bradlees, Filene's, Caldor's, G.E. Visa, Home Depot, Burdine's, Southern Bell Telephone, and Crown Cable. She shall hold the plaintiff free, harmless and indemnified thereon.
4. The parties shall share equally in any liability to the State of Connecticut for 1993.
5. The plaintiff shall pay to the wife, as and for child support, the sum of $320 per week, which amount is in accordance with the current Child Support Guidelines. The plaintiff shall pay such amount until the older minor child attains the age of eighteen (18) years, dies, or is sooner emancipated, or attains the age of eighteen (18) years but is unmarried and a full-time high school student and residing with a parent, in which event the plaintiff shall pay child support until such time as the child completes the twelfth (12th) grade or attains the age of nineteen (19) whichever first occurs. When the plaintiff's child support obligation terminates as to the older child, he shall pay an amount as and for child support for the remaining minor child consistent with the applicable Child Support Guidelines in effect at that time. He shall pay said amount until the remaining minor child attains the age of eighteen (18) years, dies, or is sooner emancipated, or attains the age of eighteen (18) years but is unmarried and a full-time high school student and residing with a CT Page 9211 parent, in which event, the plaintiff shall pay child support until such time as the child completes the twelfth (12th) grade or attains the age of nineteen (19) whichever first occurs.
6. The husband shall pay to the wife the sum of $200 per week as and for alimony until the wife's death, remarriage, or cohabitation, or for a period not to exceed seven (7) years from the date of this decree.
7. (a) The plaintiff shall provide health insurance for the benefit of the minor children. Said order shall be subject to the provisions of Connecticut General Statutes, Sec. 46b-84(d). The parties shall be equally responsible for all unreimbursed medical, dental, psychiatric, psychological, orthodontic and prescriptive drug costs incurred on behalf of the children.
(b) The plaintiff shall maintain life insurance for the benefit of the minor children and for the defendant so long as he has an obligation to support them. In the event the plaintiff's life insurance changes because of a change of employers, he is to procure life insurance in the amount equivalent to what presently exists and name the wife and children as beneficiaries.
The defendant shall own the Metropolitan Life Insurance policy. She shall be responsible for paying $35 per month on said policy. With regard to the Metropolitan Life Insurance policy, the children shall be named as equal beneficiaries on this policy when the plaintiff's obligation to pay alimony to the defendant ceases.
8. The retirement and pension plan of the plaintiff's shall be divided equally with the defendant.
9. The plaintiff shall be entitled to claim the children as exemptions on his federal and state income tax returns for 1995 and 1996. The defendant will be entitled to take one of the children as an exemption on her federal or state income tax returns beginning in 1997.
10. The defendant shall be entitled to the child care reimbursements for the years 1993 and 1994 from Norwalk Hospital. In 1995, the defendant shall be entitled to any reimbursements for the day care program from Norwalk Hospital until such time day care becomes unnecessary or until such time as Norwalk Hospital no longer reimburses the day care expenses. CT Page 9212
11. The parties shall retain their own vehicles.
12. The parties shall list their personal possessions and make an agreement as to which personal possessions each may have. In the event they are unable to come to an agreement, they are to submit to Family Relations negotiation and mediation those items upon which they cannot agree. In the event that they are unable to come to an agreement with the Family Relations office, the matter shall be returned to court.
13. Each party shall pay his or her own attorney's fees.
14. The defendant shall give to the plaintiff, within thirty (30) days of the date of this decision, the sum of $1,000 which represents reimbursement for one-half of his expenses for the Florida trip and the loan he gave her with regard to purchasing the Ford Taurus which she later traded.
All other claims for relief which have not been addressed herein have been rejected.
Judgment may enter, accordingly.
Counsel are to be commended for their clear presentation of the issues.
Leheny, J.